UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CRAIG CUNNINGHAM,

       Plaintiff,

                Case # 17-CV-1305-FPG

v.

                DECISION AND ORDER

CHANNER, LLC, at al.,

       Defendants.

## INTRODUCTION

*Pro se* Plaintiff Craig Cunningham brings this action against Defendants Jerome Davis, William Nelson, Lillian Roman, Direct Capital Associates, LLC, and Channer, LLC under the Telephone Consumer Protection Act (TCPA), the Fair Debt Collection Practices Act (FDCPA), and Section 392 of the Texas Finance Code. ECF No. 1. On January 26, 2018, Plaintiff moved for the Clerk of Court to issue five subpoenas to obtain phone records relevant to his case. ECF No. 3. On March 8, 2018, Plaintiff requested that the Clerk enter default against all Defendants after they failed to timely answer the Complaint. ECF No. 5. The Clerk entered default judgment against Defendants under Federal Rule of Civil Procedure 55(a) the next day. ECF No. 6. On April 13, 2018, Plaintiff moved for default judgment under Rule 55(b). ECF No. 8.[1] For the reasons stated below, Plaintiff's Motion for Subpoenas is GRANTED and his Motion for Default Judgment is DENIED without prejudice to file an amended complaint.

## BACKGROUND

Plaintiff lives in Nashville, Tennessee and is no stranger to TCPA and FDCPA litigation, as he has filed at least twelve federal lawsuits concerning those statutes since 2012. *See*

---

[1] Plaintiff filed an identical motion for default judgment on March 8, 2018. ECF No. 7.

1

*Cunningham v. Kondaur Capital*, No. 3:14-1574, 2014 WL 8335868, at *3 (M.D. Tenn. Nov. 19, 2014) ("[T]he plaintiff, although proceeding *pro se*, has filed no less than 11 other lawsuits in this District alone since 2012."). The main target of Plaintiff's latest suit is a mysterious entity named Channer, LLC. On its website, which consists of stock photos and seemingly fake customer endorsements written in broken English, Channer bills itself as a "financial agency . . . based in Buffalo, specializ[ing] in collection solutions."[2] Channer has not responded to Better Business Bureau investigations[3] and is a defendant in at least one other federal lawsuit. *See Robertson v. Pinnacle Asset Grp., LLC et al.*, No. 2:15-cv-13446-AC-MKM, ECF No. 16 (W.D.Mi. May 22, 2017).

Plaintiff alleges that in "2017 through the present," he received "multiple automated phone calls with a pre-recorded message" from a blocked caller ID to his cellphone. ECF No. 1 at 3. The message told Plaintiff to call the "fraud investigations unit" and press "1" to "contact our office now." *Id.* When Plaintiff did so, an agent stated that "they were with U.S. Investigative Services." *Id.* Plaintiff asserts that "in reality, this was a false name given to deflect suspicion away from the actual callers being Channer, LLC and Direct Capital Associates, LLC." *Id.* The agent who identified herself as U.S. Investigative Services told Plaintiff that the call was related to a woman named Megan Gordan and that Miami-Dade County was charging Ms. Gordan "with Collateral check fraud and malicious intent to defraud a financial institution." *Id.* at 4.

In an "attempt to identify the callers that were calling from a blocked number and were exerting high pressure scare tactics," Plaintiff lied and stated that Megan Gordan was his wife. *Id.* The agent then claimed that she was collecting on behalf of Plain Green Financial, LLC, and that

---

[2] *See* Channer LLC, http://channerllconline.com (last visited Sept. 25, 2018).
[3] *See* Better Business Bureau, https://www.bbb.org/us/ny/buffalo/profile/collections-agencies/channer-llc-0041-235984996 (last visited Sept. 25, 2018).

Ms. Gordon owed Plain Green, LLC, a tribal lending entity, $2,636.30. *Id.* The agent stated that she had no information from Plain Green to substantiate the debt but that by making a payment, Plaintiff could "secure a stop order" that would help Ms. Gordon avoid "possible consequences" and "legal repercussions." *Id.*

Because of his "interest in identifying the parties involved," Plaintiff paid the agent $61.87 over the phone via credit card. *Id.* at 5. Later, Channer, LLC emailed Plaintiff a payment authorization form bearing the address 523 Main Street, Ste. 103, Buffalo, NY 14203 and Channer's phone number, 855-854-8567. *Id.* at 6. Plaintiff called the number and spoke with Channer's owner, Jerome Davis, who gave Plaintiff the number of 844-589-6220 to reach the collection agency that Jerome said he was processing payments on behalf of. *Id.*

Plaintiff alleges that Channer, LLC and Direct Capital, LLC operated a "common enterprise" to place "illegal calls" to consumers about debts. *Id.* at 3. He alleges that all of the individual defendants—Jerome Davis, Lillian Roman, and William Nelson—are "individually, jointly, and severally liable for the calls," although he does not give additional facts indicating who Nelson and Roman are, or how he concluded that Channer and Direct Capital are operating a common enterprise.

For unapparent reasons, Plaintiff first brought this suit in the U.S. District Court for the Northern District of Texas. *Cunningham v. Channer*, Civil No. 3:17-cv-546-L (N.D. Tex. 2017), ECF No. 1. The defendants in the previous lawsuit are the same as those in this suit, only Plaintiff, then represented by counsel, named an entity called "National Debt Assistance" as a defendant instead of Direct Capital, LLC and omitted Roman and Nelson. *Id.* at 1. The allegations in that suit are slightly different from those in this Complaint. In his First Amended Complaint for the Texas lawsuit, which counsel wrote, Plaintiff alleged that Jerome Davis explicitly told him that

3

the "debt collector's name was not U.S. Investigative Services but was really an entity named National Debt Assistance." *Id.* at 5. Furthermore, the Texas complaint alleges that "Plain Green Financial sold the debts in question to Channer, LLC," *id.* at 6, an allegation that is not in this Complaint.

On October 20, 2017, the court ordered Plaintiff to show why the court had personal jurisdiction over the defendants, given that Plaintiff "allege[d] no facts showing that Mr. Davis—either himself or through Channer—committed any acts in or directed any activity toward Texas." *Channer*, Civil No. 3:17-cv-546-L, ECF No. 28 at 7. Ultimately, the court dismissed Plaintiff's case without prejudice on April 2, 2018. *Id.* at ECF No. 36.

On December 14, 2017, Plaintiff filed this suit raising claims under the TCPA, the FDCPA, and Section 392 of the Texas Finance Code. ECF No. 1. On January 10, 2018, process server Michael Hadden served the summons for Channer, LLC at 523 Main Street, Suite 103 in Buffalo, New York—the address that Channer lists as its headquarters on its website and on the payment authorization form it emailed to Plaintiff. ECF No. 1 at 6. According to Hadden, the "principle owner" of the address, an African American male who appeared to be 40-45 years old, refused to give his name but ultimately stated that it was "John Smith" and accepted summons for Channer, LLC, Roman, and Nelson. ECF No. 2 at 3-9. On January 11, 2018, process server Christopher Warner served an authorized agent of Direct Capital Associates in Albany, New York. *Id.* at 11. On January 30, 2018, Hadden served summons for Jerome Davis at 523 Main Street in Buffalo, and, once again, the man purporting to be John Smith accepted service. ECF No. 4.

On January 26, 2018, Plaintiff requested the clerk to "issue 5 subpoenas to obtain phone records and documents which may be able to identify other 3rd parties that participated in or profited from the calls in question in this case." ECF No. 3 at 1. Upon Plaintiff's request, the Clerk

4

entered default against all Defendants on March 8, 2018. ECF No. 6. On April 13, 2018, Plaintiff moved for default judgment under Federal Rule of Civil Procedure 55(b)(2). ECF No. 8. He requested the Court enter judgement for "$100,000 in punitive damages, $5,000 in damages under the Texas Finance Code 392, and $15,000 in statutory damages, $1,000 in damages for violations of the FDCPA, 15 U.S.C. 1692 plus $500 in costs." *Id.* He also requested a damages hearing. *Id.*

## DISCUSSION

### I. Motion for Subpoenas

Under Federal Rule of Civil Procedure 45(a)(3), the Clerk of Court "*must* issue a subpoena, signed but otherwise in blank, to a party who requests it," and that "party must complete it before service." (emphasis added). Because Plaintiff is not proceeding *in forma pauperis*, the Court has no discretion to screen his subpoena request. *See Jackson v. Brinker*, No. IP 91-471-C, 1992 WL 404537, at *1 (S.D. Ind. Dec. 21, 1992) ("[A] district court may, in its discretion, screen an indigent's subpoena requests . . ."). In the future, Plaintiff should request subpoenas directly from the Clerk and need not do so through a motion. *See Amaker v. Zon*, No. 94-CV-843E(H), 1998 WL 268861, at *1 (W.D.N.Y. May 18, 1998) ("[P]laintiff's motion for a subpoena will be denied without prejudice to his requesting such from the Clerk of this Court.").

It is unclear who Plaintiff intends to subpoena and whether he intends to subpoena a party. While some courts hold the view that Rule 45 applies to non-parties only, other courts have held that a Rule 45 subpoena may properly be served on a party. *See Mortg. Info. Servs., Inc. v. Kitchens*, 210 F.R.D. 562, 564 (W.D.N.C. 2002) ("[W]ith respect to whether a Rule 45 subpoena may properly be served on a party, the Court notes that other district courts that have addressed this issue in recent years have taken conflicting positions."). Furthermore, Plaintiff has no choice but to use subpoenas because Defendants have "failed to appear" and are thus "not considered a

5

party for purposes of discovery and, accordingly, a motion to compel served by mail is not enforceable." *Davis v. Brown*, No. CV 12-1906 (SJF) (ETB), 2013 WL 1933850, at *1 (E.D.N.Y. May 9, 2013). A subpoena is therefore "needed in this situation." *Id.* The Court refers Plaintiff to Rule 45(b) for the rules governing service of subpoenas.

## II. Motion for Default Judgement

The Court may enter default judgment against a party that fails to defend an action brought against it, and the failure has been "shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). When the Court determines that a defendant is in default, it should draw all reasonable inferences[4] in favor of the non-defaulting party. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). A defendant's default is therefore "an admission of all well-pleaded allegations against the defaulting party." *Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. 2004).

### A. Service

Before it can grant default judgment against Defendants, the Court must have personal jurisdiction over them. *Popper v. Podhragy*, 48 F. Supp. 2d 268, 271 (S.D.N.Y. 1998). To exercise personal jurisdiction over defendants, "[t]he procedural requirement of effective service of process must be satisfied." *Local 78, Asbestos, Lead & Hazardous Waste Laborers, AFL-CIO v. Termon Constr., Inc.*, No. 01 Civ. 5589 (JGK), 2003 WL 22052872, at *3 (S.D.N.Y. Sept. 2, 2003) (citing *Am. Inst. of Certified Pub. Accountants v. Affinity Card, Inc.*, 8 F. Supp. 2d 372, 376 (S.D.N.Y. 1998)).

Rule 4(e) allows plaintiffs to follow "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is

---

[4] While the Court must construe a *pro se* litigant's complaint liberally, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), as another court litigating one of Plaintiff's cases pointed out, Plaintiff's "instant foray into litigation is significantly unlike the ordinary *pro se* plaintiff who makes a one-time appearance into the realm of unfamiliar legal proceeding." *Cunningham*, 2014 WL 8335868, at *3.

6

made." Fed. R. Civ. P. 4(e). New York state law explicitly allows plaintiffs to serve by "delivering the summons within the state to a person of suitable age or discretion at the actual place of business . . . of the person to be served." N.Y. C.P.L.R. § 308(2); *see also Diamond D Constr. Corp. v. N.Y. State Dep't. of Labor*, No. 00-CV-335C(F), 2004 WL 1877720, at *15 (W.D.N.Y. Aug. 20, 2004). Accordingly, it appears that Jerome Davis has been properly served under the Federal Rules, as his actual place of business is the office of Channer, LLC at 523 Main Street in Buffalo, and an apparent adult of suitable age and discretion accepted service there. Furthermore, the Court takes judicial notice of the fact that Davis accepted service there in another lawsuit. *See Robertson*, No. 2:15-cv-13446-AC-MKM, ECF Nos. 48, 54.

As for Channer, LLC, New York law requires individuals serving corporations to serve summons "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." N.Y. C.P.L.R. § 311(1). While it is unclear if the man who accepted service for Channer—purportedly "John Smith"—was an officer, director, or agent, New York courts have validated service on unauthorized individuals so as to avoid inequitable results. *See, e.g.*, *Belofatto v. Marsen Realty Corp.*, 62 Misc. 2d 922, 310 N.Y.S.2d 191 (Civ. Ct. 1970). In those cases, the courts looked to whether the process server "acted reasonably in placing the summons within reach of the defendant, and therefore, with 'due diligence' in fulfilling the statutory requirement of personal delivery. In such cases, service is sustained even though the process server did not in fact hand the summons to the proper party." *Id.* at 193.

Here, the process server served an adult who held himself out as authorized to accept service on Channer's behalf. That adult could have been Jerome Davis or another agent authorized to accept service for Channer. In this instance, especially given Channer, LLC and Davis's evasive

7

behavior, the Court deems Plaintiff's service of Channer acceptable, and it does so to avoid an inequitable result. Additionally, Plaintiff properly served Direct Capital Associates by serving the entity's authorized agent in Albany, New York. *See* N.Y. C.P.L.R. § 311(1); ECF No. 2.

It is unclear whether service was proper as to William Nelson or Lillian Roman. Plaintiff's Complaint asserts that Roman and Nelson "act[ed] through the entities Direct Capital Associates, LLC and Channer, LLC" and that the two entities were a common enterprise, ECF No. 1 at 2, but it offers no well-pleaded facts to support these assertions. The only well-pleaded allegation involving an individual is that Jerome Davis is Channer's manager. Plaintiff offers no facts to support his conclusion that Channer and Direct Capital are a common enterprise and that Roman and Nelson were employees of either organization. While a complaint in another action[5] involving Channer and Direct Capital made the same allegations—and supported them with factual details— the Court cannot take judicial notice of a public record "for the truth of the facts asserted in the opinion." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). Additionally, for reasons that will be discussed later in this opinion, Plaintiff has not adequately alleged that Roman and Nelson are liable to Plaintiff under the TCPA. Accordingly, at this time, Plaintiff has not sufficiently demonstrated that 523 Main Street in Buffalo is a proper service address for Roman or Nelson.

    **B.    Texas Finance Code**

The Court assumes that Plaintiff's inclusion of claims under the Texas Finance Code are a clerical error. The Complaint contains no allegations whatsoever that pertain to Texas. As previously discussed, Plaintiff puzzlingly first filed this lawsuit in Texas and included claims under the Texas Finance Code, and the court granted Plaintiff's request to dismiss the case without

---

[5] *Robertson*, No. 2:15-cv-13446-AC-MKM, ECF No. 16.

prejudice after it became clear that the court lacked jurisdiction. The Court therefore DENIES Plaintiff's Motion for Default Judgement on his Texas Finance Code claims.

C.   FDCPA

As a non-debtor, Plaintiff is not a "consumer" for the purposes of the FDCPA, and thus lacks standing to sue under many provisions of the Act. *See* 15 U.S.C. § 1692a (defining "consumer" as "any natural person obligated or allegedly obligated to pay any debt"); *Barasch v. Estate Info. Servs., LLC*, No. 07-CV-1693 (NGG) (MDG), 2009 WL 2900261, at *2 (E.D.N.Y. Sept. 3, 2009) ("[C]ourts have found that only a 'consumer' has standing to sue under particular sections of the FDCPA that specifically regulate communications 'with the consumer.'") (quoting *Bank v. Pentagroup Financial*, No. 08-CV-5293(JG)(RML), 2009 WL 1606420, at *4 (E.D.N.Y. June 9, 2009)).

While Plaintiff has not specified which provisions of the FDCPA apply to his suit, the alleged facts seem to invoke 15 U.S.C. § 1692e, a provision that is not expressly limited to consumers and which prohibits the "false representation of . . . the character, amount, or legal status of any debt" and "[t]he use of any false representation or deceptive means to collect of attempt to collect any debt." District courts have found that "an attempt to collect a debt from a non-debtor constitutes a 'false representation' as to the character or status of the debt in violation of 1692e." *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 254 (S.D.N.Y. 2011); *see also Valdez v. Capital Mgmt. Servs., LP*, No. 09-246, 2010 WL 4643272, at *12 (S.D. Tex. Nov. 16, 2010) ("Several district courts have held that attempting to collect a debt from a person whom the debt collector knows does not owe the debt misrepresents the 'character' or 'legal status' of the debt and is actionable under 15 U.S.C. § 1692e(2)(A)."). Here, Megan Gordon was the purported debtor and the facts in the Complaint indicate that the entity purporting to be U.S.

Investigative Services was attempting to collect a debt from Plaintiff even though it knew he was not Ms. Gordon. Consequently, the Complaint alleges that U.S. Investigative Services, or the entity posing as U.S. Investigative Services, misrepresented the character of the debt in violation of the FDCPA.

The analysis, however, does not end there. Even though 15 U.S.C. § 1692e is not among the FDCPA provisions that expressly apply to consumers only, the Second Circuit has held that, "at the very least, a plaintiff who 'is not the debt consumer' and 'neither stands in the shoes of a consumer . . . nor has pleaded injurious exposure to the debt collection'" attempts at issue "lacks standing to bring an action." *Schwartz v. Resurgent Capital Servs., LP*, No. 08 CV 2533 (NG) (RML), 2009 WL 3756600, at *3 (E.D.N.Y. Nov. 9, 2009) (quoting *Sibersky v. Goldstein*, 155 F. App'x 10, 12 (2d Cir. 2005) (summary order)).

Plaintiff has not plead facts indicating that he stands in the shoes of a consumer, nor has he pleaded injurious exposure to the debt collection attempt at issue. The Second Circuit has not yet precisely defined "injurious exposure," *see Schwartz*, 2009 WL 3756600, at *4, but Plaintiff has not alleged that he suffered any actual damages and has not otherwise plead facts that the Court may reasonably construe as injurious exposure. While Plaintiff paid $61.87 to the agent who called him, he was hardly duped into doing so. Instead, he paid the agent solely for his own investigative purposes after he lied about being Megan Gordon's husband. Those facts, even construed liberally, do not indicate that the debt collection attempted harmed Plaintiff in any way. Accordingly, the Court DENIES Plaintiff's Motion for Default Judgement on his FDCPA claim on the basis[6] of standing.

---

[6] Plaintiff's FDCPA claim fails for additional reasons, but the Court need not discuss those reasons given Plaintiff's inability to allege standing.

### D. TCPA

Plaintiff's Complaint also lacks well-pleaded allegations from which the Court may infer Defendants' liability under the TCPA. In February of 2017, the U.S. District Court for the Northern District of Texas dismissed Plaintiff's case against TechStorm, LLC because Plaintiff failed to "provide the date or time [the offending phone] calls were received beyond stating" the years the calls were made. *Cunningham v. TechStorm, LLC*, No. 3:16-CV-2879-M, 2017 WL 721079, at *2 (N.D. Tex. Feb. 23, 2017). Plaintiff makes the exact same error here, only this time he was already on notice of the need to plead specific dates and times but failed to do so anyway.[7]

Plaintiff's TCPA claim is defective for additional reasons. The claim is premised on 47 U.S.C. § 227(b)(A), which requires the offender to "make any call . . . using any automatic telephone equipment" to a cellphone. However, the Complaint does not allege that any Defendants made the calls in question. According to the Complaint, the callers called from an unknown/blocked caller ID and left a pre-recorded message instructing Plaintiff to call a phone number. When he did so, Plaintiff was connected to an agent stating they were with US Investigative Services. Plaintiff asserts that "in reality" he was speaking to a Channer/Direct Capital Associates employee, but he offers no additional facts indicating how he arrived at this conclusion. Channer itself has a different phone number from the one referenced in the pre-recorded voice message that Plaintiff received, and Jerome Davis told Plaintiff that the number mentioned in the pre-recorded message belonged to the collection agency that Channer was processing payments on behalf of—not Channer itself. The Complaint does not mention the name of the collections agency that Davis referred Plaintiff to. Based on Plaintiff's complaint from his

---

[7] In the affidavit supporting his Motion for Default Judgment, Plaintiff specifies that he received "at least 5 calls from Channer LLC on May 30 and May 31st 2017 from an unknown caller ID . . .," *see* ECF No. 5 at 5, but this allegation is not in his Complaint.

Texas suit, perhaps that entity was National Debt Assistance or Direct Capital Associates, but the present Complaint does not elaborate. While Plaintiff believes the collection agency and Channer are one in the same, he alleges no facts from which the Court can make that inference. The Complaint fails to allege that any Defendant made the phone calls at issue and is therefore directly liable for violating the TCPA.

Alternatively, Plaintiff claims that Channer/Direct Capital Associates is vicariously liable under the TCPA. Many courts have considered whether a defendant may be held vicariously liable under the TCPA in accordance with traditional agency principles, and the "overwhelming majority" of those courts "have answered that question in the affirmative." *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 135 (E.D.N.Y. 2015); *see also Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 675 (2016) ("[T]he Federal Communications Commission has ruled that, under federal common-law principles of agency, there is vicarious liability for TCPA violations."). Plaintiff, however, has failed to adequately plead an agency relationship between any Defendant and the entity that called him.

Agency exists where a principal "manifests assent to another person (the agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) Agency, § 1.01. Plaintiff has not asserted any facts alleging that Channer manifested assent to another to act on its behalf or under its control. Setting aside Plaintiff's conclusory allegations, the only well-pleaded factual allegation is that Channer processed a payment on a debt collector's behalf. The other allegations—that Channer operates a common enterprise with Direct Capital, has a "formal written contract with the calling party and knows that they will make illegal calls to harass and intimidate consumers into paying," ECF No. 1 at 6, and that Channer posed as U.S. Investigative Services to

"deflect suspicion" away from itself—are entirely conclusory, and Plaintiff does not provide underlying facts to support these assertions. While the Court must draw inferences in the non-defaulting party's favor, it must do so reasonably. The Complaint lacks sufficient facts or details from which the Court may infer vicarious liability. Plaintiff has therefore failed to state a TCPA claim based on a vicarious liability theory.

Finally, Plaintiff also claims that Lillian Roman, Jerome Davis, and William Nelson are individually liable under the TCPA. While the Second Circuit has not ruled on the issue of individual liability under the FDCPA, courts in the Second Circuit have "recognized that individual liability may be imposed where the defendant sought to be held liable personally engaged in the prohibited conduct." *Baltazar v. Houslanger & Assocs.*, No. 16-4982 (JMA) (AKT), 2018 WL 3941943, at *17 (E.D.N.Y. Aug. 16, 2018) (quoting *Krapf v. Prof'l Collection Servs., Inc.*, 525 F. Supp. 2d 324, 327 (E.D.N.Y. 2007)). Once again, Plaintiff advances a conclusory assertion—that Roman, Davis, and Nelson "personally participated and authorized the calls"—but does not offer any supporting factual detail whatsoever. While Plaintiff details his interaction with Jerome Davis, that interaction does not establish Davis's personal liability for the offending calls. As for Nelson and Roman, the Complaint provides no detail about their involvement in the relevant phone calls. The Court therefore DENIES Plaintiff's request for default judgment based on his TCPA claim.

## CONCLUSION

For the reasons stated, Plaintiffs' Request for Default Judgment under Rule 55(b)(2) (ECF No. 8) is DENIED,[8] but his Motion for Subpoenas (ECF No. 3) is GRANTED. The Clerk of Court is directed to issue and mail five subpoenas to Plaintiff. Should Plaintiff wish to file an amended

---

[8] ECF No. 7, which is identical to ECF No. 8, is also denied on this basis.

complaint if he obtains additional information through the subpoena process, he must do so by November 28, 2018. Otherwise, the Clerk of Court will close this case by that date without further order.

IT IS SO ORDERED.

Dated: September 26, 2018
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court